1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   BOARD OF DIRECTORS OF THE     )   CV 16-5771-RSWL-KSx
     MOTION PICTURE INDUSTRY       )
13   PENSION PLAN et al.           )
                                   )   **ORDER re PLAINTIFFS'**
14                                 )   **MOTION FOR ENTRY OF**
                   Plaintiffs,     )   **DEFAULT JUDGMENT AGAINST**
15                                 )   **DEFENDANTS S&L TRAMONDO,**
                                   )   **INC. & ALTERNATIVE METAL**
16        v.                       )   **SUPPLY - STUDIO**
                                   )   **DIVISION, INC.** [21-1]
17                                 )
     S&L TRAMONDO, INC.;           )
18   ALTERNATIVE METAL SUPPLY -    )
     STUDIO DIVISION, INC.,        )
19                                 )
                                   )
20   _____     )
                   Defendants.     )

21        Currently before the Court is Plaintiffs' Motion

22   for Entry of Default Judgment [21-1] ("Motion" or

23   "Motion for Default Judgment") against Defendants S&L

24   Tramondo, Inc. ("S&L Tramondo") and Alternative Metal

25   Supply - Studio Division ("Alternative Metal Supply")

26   (collectively, "Defendants") as to all claims.  The

27   Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS**

28   Plaintiffs' Motion and awards $18,149.41 in damages to

                              1

Plaintiffs, plus interest, at the rate of one percent (1%) per month, commencing when payment was due beginning October 25, 2006 and continuing until payment is made.   The Court also **ORDERS** Defendants submit to an audit of its financial records by Plaintiffs for the period July 15, 2012 to May 21, 2016.

## I. BACKGROUND

### A.   Factual Background

Plaintiffs are The Boards of Directors of the Motion Picture Industry Pension Plan, the Motion Picture Industry Account Plan, and the Motion Picture Industry Health Plan ("the Plans").   Compl. ¶ 3, ECF No. 1.   The Plans were established pursuant to collective bargaining agreements between entertainment industry employers and IATSE.[1]   Compl. ¶ 4.

The Plans are employee welfare benefit and pension plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(1)(29 U.S.C. § 1002(1)) and § (3)(2)(29 U.S.C. § 1002(2)), and are multiemployer plans within the meaning of ERISA § 3(37)(A)(29 U.S.C. § 1002(37)(A)) and § 515 (29 U.S.C. § 1145).   Id. at ¶ 4.   The Plans are subject to the provisions of section 302(c)(5) of the Labor-Management Relations Act of 1947 ("LMRA").   Id. at ¶ 3.

Defendant S&L Tramondo is a business entity, form

---

[1] International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada is an unincorporated labor organization.

2

1  unknown, doing business in Los Angeles County under the
2  name "Alternative Metal Supply, Studio Division." Id.
3  at ¶ 5.  S&L Tramondo has falsely held itself out as a
4  California corporation, entity number C2868919.  Id.
5  State of California Entity Number C2868919 belongs to
6  Alternative Metal Supply.  Id.
7      In March 2006, S&L Tramondo entered into a
8  Memorandum of Agreement with IATSE, agreeing to pay
9  contributions to the Plans for all employees from the
10  date of hire.  Id. at ¶ 10; Compl. Ex. 1.  Between
11  March 2006 and February 2007, S&L Tramondo and
12  Alternative Metal Supply executed various agreements to
13  pay contributions to the Plans for all employees from
14  the date of hire.  Id. at ¶¶ 11-14; Exs. 2-5.
15  Alternative Metal Supply executed Consent Agreements
16  with IATSE agreeing to be bound by the 2003 Music Video
17  Production Agreement ("MVPA"), the 2004 Television
18  Commercial Agreement ("Commercial Agreement"), and the
19  2004-2007 Low Budget Theatrical Agreement.  Id. at ¶¶
20  11-13.  S&L Tramondo executed the 2007-2009 Low Budget
21  Theatrical Agreement.  Id. at ¶ 14.
22      Defendants also executed Trust Acceptances,
23  agreeing to be bound by all terms and conditions of the
24  Trust Agreements establishing the Plans ("Trust
25  Agreements").  Id. at ¶ 15; Compl. Ex. 6.  The Trust
26  Agreements obligated Defendants to submit a report and
27  pay contributions on a weekly basis to the Plans for
28  each hour worked by or guaranteed to employees.  Id. at

3

¶ 17; Decl. of Chris Tashchyan ("Tashchyan Decl.") Ex. 1, p. 11; Ex. 2, p. 18; Ex. 3, p. 24, ECF No. 21-2. 21-3.

The Trust Agreements set forth payment procedures for delinquent contributions to the Plans. Contributions are delinquent if they are not received within ten days from the date such contributions become due. Tashchyan Decl. Ex. 1, p. 11; Ex. 2, p. 18; Ex. 3, p. 24. The Trust Agreements provide for the assessment at an interest rate of one percent (1%) per month on delinquent contributions, commencing when payment was due and continuing to the date when payment is made. Compl. ¶ 18; Tashchyan Decl. Ex. 1, p. 11; Ex. 2, p. 18; Ex. 3, p. 24. In addition, the Trust Agreements require payment of liquidated damages[2] for delinquent contributions. Compl. ¶ 18; Tashchyan Decl. Ex. 1, p. 12; Ex. 2, p. 19; Ex. 3, p. 26. Finally, in the event of a delinquency, employers are liable for all expenses of collection/enforcement, including all costs, reasonable accountant's fees, auditor's fees, and attorney's fees. Compl. ¶ 18; Tashchyan Decl. Ex. 1, p. 11; Ex. 2, p. 19; Ex. 3, p. 26.

Moreover, the Trust Agreements provide that the Board of Directors may, "at reasonable times and during normal business hours of any Employer," audit any

---

[2] The amount of liquidated damages is the greater of either: (1) twenty percent (20%) of all unpaid contributions; or (2) interest calculated at a rate of one percent (1%) per month from the due dates until the date when payment is made. Id.

1  employer's records that may be pertinent to the status

2  of plan contributions or reports. Compl. ¶ 19;

3  Tashchyan Decl. Ex. 1, pp. 14-15; Ex. 2, p. 21; Ex. 3,

4  p. 28. If the audit reveals a delinquency,

5  underpayment, or erroneous reporting, the Employer

6  bears costs of the audit or inspection. Id. And if

7  Defendants fail to make records available for audit and

8  the Plans file a lawsuit to compel document production,

9  Defendants are liable for enforcement expenses,

10 reasonable accountants' fees, auditors' fees,

11 attorneys' fees and costs, delinquent contributions,

12 liquidated damages, interest, attorneys' fees and costs

13 (regardless of whether the audit identifies delinquent

14 contributions). Compl. ¶ 20.

15      In 2014, Plaintiffs completed an audit of

16 Defendants' records for the period of October 25, 2006

17 to May 4, 2010 (the "Audit"). Compl. ¶ 24; Tashchyan

18 Decl. ¶ 11, Ex. 10, ECF No. 21-5. The Audit revealed

19 for the first time that Defendants failed to properly

20 report and pay contributions due to the Plans in the

21 amount of $9,523.58. Compl. ¶ 24; Tashchyan Decl. ¶

22 11. In March 2016, Defendants agreed to pay the audit

23 delinquency in monthly installments, but only made

24 partial payment of $1,584.80. Id. at ¶ 25. A total of

25 $7,938.78 is still owed in contributions. Id.

26      Defendants also currently have failed to make

27 available for inspection records from July 15, 2012 to

28 May 21, 2016. Compl. ¶ 27. Plaintiffs ask the Court

1    to order Defendants to make said records available for

2    an audit so that they can ascertain whether

3    contributions were properly reported and paid to the

4    Plans from July 15, 2012 to May 21, 2016.  Id. at ¶ 29.

5    **B.  Procedural Background**

6         Plaintiffs filed a Complaint against all Defendants

7    on August 3, 2016, alleging three claims: (1) breach of

8    contract for failure to pay the audit delinquency

9    pursuant to the Trust Agreements; (2) failure under

10   ERISA § 502(a)(3)(29 U.S.C. § 1132(a)(3)), ERISA §

11   502(g)(2)(E)(29 U.S.C. § 1132(g)(2)(E)) to make records

12   available for audit as set forth in the Plans; and (3)

13   violation of ERISA § 515 (29 U.S.C. § 1145) for failure

14   to accurately report and pay contributions to the

15   Plans; Compl. ¶¶ 24-25, 30, 31.

16        Plaintiffs seek the following damages from

17   Defendants: (1) $7,938.78 for unpaid contributions from

18   10/25/06-05/04/10; (2) $7,704.08 interest (through

19   October 31, 2016); (3) $7,704.08 liquidated damages

20   (through October 31, 2016); (4) attorneys' fees of

21   $2,000.81; and (5) litigation costs of $505.74.

22   Tashchyan Decl. ¶ 15; Notice of Mot. for Default Judgm.

23   3:4-9, ECF No. 21.  Plaintiffs also seek an order from

24   this Court compelling Defendants to make available all

25   books and records for the period of July 15, 2012

26   through May 21, 2016.  Compl. ¶ 4A.  If Defendants

27   cannot produce all records, Plaintiffs ask the Court to

28   Order Record Reconstruction directing Defendants to

make available all copies of its periodic reports to
the Federal and State agencies and to provide auditors'
fees, reasonable attorneys' fees, and costs of suit.
Id. at ¶¶ 5B, 6-8.

Defendants were served with the summons and
complaint on August 16, 2016.  Proof of Service, ECF
Nos. 12, 13.  Neither appeared or otherwise responded
to the Complaint.  On September 14, 2016, Plaintiffs
requested the Clerk to enter default against
Defendants.  ECF Nos. 16, 17.  The Clerk entered
default against Defendants on September 15, 2016,  ECF
Nos. 18, 19.  On October 26, 2016, Plaintiffs filed
this Motion.  ECF No. 21-1.  The Opposition was due on
November 8, 2016 but none was filed.

## II. DISCUSSION

**A.  Legal Standard**

The granting of Default Judgment is within the
discretion of the district court.  Aldabe v. Aldabe,
616 F.2d 1089, 1092 (9th Cir. 1980); see Fed. R. Civ.
P. 55. Procedural and substantive requirements must be
met.

Procedurally, the requirements set forth in Federal
Rules of Civil Procedure 54(c) and 55(b), and Local
Rule 55-1 must be met.  See Vogel v. Rite Aid Corp.,
992 F. Supp. 2d 998, 1006 (C.D. Cal 2014).  Local Rule
55-1 provides: "When an application is made to the
Court for a default judgment, the application shall be
accompanied by a declaration in compliance with

7

F.R.Civ.P. 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Service Members Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)."  L.R. 55-1.

Courts should also consider the following factors in determining whether to grant a motion for default judgment: "(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

If the court determines that the defendant is in default, "'the factual allegations of the complaint, other than those relating to damages, are taken as true.'"  <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)).

Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

If the Court determines that the allegations in the complaint are sufficient to establish liability, the plaintiff must provide proof of all damages sought in the complaint, and the Court must determine the "amount and character" of the relief that should be awarded. Id. at 1005-06 (citations omitted); PepsiCo, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B. Discussion**

1. Jurisdiction and Service of Process

In considering whether to enter default judgment against Defendants, the Court must first determine whether it has jurisdiction over the subject matter and the parties to the case. In re Tuli, 172 F.3d at 712.

a. *Subject Matter Jurisdiction, Personal Jurisdiction, and Service of Process are Proper*

The Court has subject matter jurisdiction over the case, as Plaintiffs' claims allege violations of federal claims for unpaid contributions under ERISA,

1  failure to comply with audits under the Plan terms and
2  ERISA, and breach of the Trust Agreements under LMRA §
3  301(a) (29 U.S.C. § 185(a)).[3]  Bd. of Trustees of Cement
4  Masons Health & Welfare Trust Fund for N. Cal. v. C&C
5  Concrete, Inc., No. C 10-03343 LB, 2013 WL 2456560, at
6  *3 (N.D. Cal. June 6, 2013) (subject matter
7  jurisdiction satisfied in motion for default judgment
8  for nearly-identical ERISA and LMRA type claims).

9       Here, the Court has personal jurisdiction over
10 Defendants.  S&L Tramondo has been doing business in
11 Los Angeles County as a California Corporation using a
12 falsely represented Entity Number C2868919.  Compl. ¶
13 5.  The State of California Entity Number C2868919
14 actually belongs to Alternative Metal Supply - Studio
15 Division, which is a suspended California corporation.
16 Id.  Both entities have minimum contacts with
17 California, as they conducted business here, held
18 themselves out as California corporations, and entered
19 into the Trust Agreements giving rise to the present
20 claims in California.  Tashchyan Decl. Exs. 1-3.

21      Lastly, service of process is met because
22 Plaintiffs properly served the summons and the
23 Complaint on Defendants on August 16, 2016 [12] [13] in

24

25       [3] 29 U.S.C. § 185(a) allows any district court of the United
26 States jurisdiction over "suits for violation of contracts
   between an employer and a labor organization representing
27 employees in an industry affecting commerce . . . ."  The Plans
   are subject to the provisions of section 302(c)(5) of the Labor-
28 Management Relations Act of 1947 ("LMRA").  Compl. ¶ 4.

conformance with Federal Rules of Civil Procedure
4(e)(2) and 4(h)(1)(A),(B).

    2.  <u>Procedural Requirements</u>

    Plaintiffs have satisfied the procedural
requirements for default judgment pursuant to Federal
Rules of Civil Procedure 55 and Local Rule 55-1.  Under
Federal Rule of Civil Procedure 55(a), the Court Clerk
properly entered default against Defendants.  ECF Nos.
18, 19.  Plaintiffs properly moved pursuant to Rule
55(b) for entry of default judgment.  ECF No. 21.

    Local Rule 55-1 asks Plaintiff to provide the
following in an application for default judgment: (1)
when and against what party the default was entered;
(2) the identification of the pleading to which default
was entered; (3) whether the defaulting party is an
infant or incompetent person; (4) that the
Servicemembers Civil Relief Act does not apply; and (5)
notice has been served on the defaulting party.

    Plaintiffs have satisfied these requirements.  The
Clerk of Court entered default judgment against
Defendants as to the Complaint on September 15, 2016
[18, 19].  Decl. of Elizabeth Rosenfeld ("Rosenfeld
Decl.") ¶ 6.  Neither Defendants are an infant,
incompetent person, or exempted under the Soldiers' and
Sailors' Civil Relief Act of 1940, the predecessor to
the Servicemembers Civil Relief Act.  <u>Id.</u> at ¶¶ 2, 3.
Lastly, Defendants were served with notice of this
Motion on October 26, 2016.  ECF No. 22.

1        3.   Eitel Factors

2        The Court must also determine whether granting

3   Plaintiffs' Motion is appropriate under the Eitel

4   factors.

5            a.  *Risk of Prejudice to Plaintiff*

6        The first Eitel factor considers whether a

7   plaintiff will suffer prejudice if a default judgment

8   is not entered.  Vogel, 992 F. Supp. 2d at 1007.

9   Plaintiffs contend that they have been damaged to the

10  tune of the delinquent contributions, associated

11  interest, liquidated damages, attorneys' fees, costs,

12  and separate attorneys' fees and costs incurred in

13  compelling the audit.  Mot. 6:24-26.  Given Defendants'

14  refusal to pay the sums due or provide records,

15  Plaintiffs will suffer prejudice because they "will

16  likely be without other recourse for recovery" if

17  default judgment is not entered.  Id. at 6:26-28.

18  Moreover, if the Court does not hold Defendants

19  accountable for unpaid contributions, future

20  beneficiaries may face risk if the Plan is underfunded.

21  Bd. Of Trustees of the Clerks & Lumber Handlers Pension

22  Fund v. Piedmont Lumber & Mill Co., No. C 10-1757 MEJ,

23  2010 WL 4922677, at *4 (N.D. Cal. Nov. 29, 2010).  And

24  allowing Defendants to avoid submitting to an audit

25  would prevent Plaintiffs from ascertaining even more

26  unpaid contributions.  See Gen. Emps. Trust Fund v.

27  Victory Bldg. Maint., Inc., No. C 06-6654 CW (MEJ),

28  2007 WL 1288393, at *3 (N.D. Cal. Apr. 11, 2007).  This

1    factor favors entry of default judgment.

2              b.   *Sufficiency of the Complaint and*

3                   *Likelihood of Success on the Merits*

4         The second and third <u>Eitel</u> factors consider the

5    merits of the plaintiff's substantive claims and the

6    sufficiency of the complaint.  "Under an [<u>Eitel</u>]

7    analysis, [these factors] are often analyzed together."

8    <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F. Supp.2d 1038,

9    1048 (N.D. Cal. 2010).  Plaintiffs have pled

10   meritorious claims for violation of the Trust

11   Agreements, violation of ERISA § 515 (29 U.S.C. §

12   1145), and the ability to audit Defendants' records

13   under the Trust Agreements.

14              i.   *Breach of Trust Agreements*

15        As a threshold matter, Plaintiffs have standing to

16   enforce Labor Management Relations Act section 301(a)

17   (29 U.S.C. § 185(a))[4] and ERISA § 515 (29 U.S.C. §

18   1145). Section 301 of the Labor Management Relations

19   Act ("LMRA") allows for third party beneficiaries, like

20   the Board of Directors of the Plans, to enforce an

21   employer-labor organization agreement.  <u>See</u> <u>Audit</u>

22   <u>Servs., Inc. v. Rolfson</u>, 641 F.2d 757, 760 (9th Cir.

23   1981).  Additionally, Plaintiffs have standing to

24

25        [4] "Suits for violation of contracts between an employer and
     a labor organization representing employees in an industry
26   affecting commerce as defined in this chapter, or between any
     such labor organizations, may be brought in any district court of
27   the United States having jurisdiction of the parties, without
     respect to the amount in controversy or without regard to the
28   citizenship of the parties."

assert their claim under ERISA.  See <u>Laborers Health &</u>
<u>Welfare Trust Fund v. Advanced Lightweight Concrete</u>
<u>Co.</u>, 484 U.S. 539, 547 (1988) ("The liability created
by [ERISA] § 515 may be enforced by the trustees of a
plan by bringing an action in federal court[.]").
Thus, Plaintiffs are entitled to enforce the Trust
Agreements against Defendants.

Plaintiffs have also demonstrated that Defendants
breached the Trust Agreements through audit
delinquency.  They were bound by the Memorandum of
Agreement to the terms and conditions of the Trust
Agreements, including the obligation to pay
contributions to the Plan for employees, Compl. ¶ 17,
the weekly remittance report and contributions, and the
associated fees for delinquent payments.  Compl. ¶ 18;
Taschyan Decl. ¶ 8A.  The Trust Agreements also allow
for enforcement expenses, should a permissible audit
inspection of the employer's records reveal unpaid
contributions.  Compl. ¶ 19.  Defendants breached these
terms when the audit revealed $9,523.58 unpaid
contributions to the Plans, and Defendants failed to
pay the audit delinquency in its entirety.  Compl. ¶¶
24-25; Tashchyan Decl. ¶¶ 11-12, 14.  Plaintiffs have
sufficiently alleged a contractual obligation to make
contributions and a subsequent breach.

### ii. *Violation of ERISA § 515*

From the evidence and four corners of the
Complaint, Plaintiffs have demonstrated meritorious

14

1  claims for violation of ERISA § 515 (29 U.S.C. § 1145).[5]

2       Section 515 allows plan fiduciaries to enforce

3  obligations created under the collective bargaining

4  agreement against employers who fail to make

5  contributions to employee benefit plans.  Bd. Of

6  Trustees of U.A. v. RT/DT, Inc., No. C 12–05111 JSW,

7  2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013).  To

8  successfully assert this claim, Plaintiffs must prove:

9  (1) the Trust Agreements are multi-employer plans; (2)

10 the collective bargaining agreement obligated

11 Defendants to make employee benefit contributions; and

12 (3) Defendants failed to make the contribution

13 payments.  Id. at *4.

14      Plaintiffs have made a threshold demonstration that

15 Defendants violated section 515 because the Plans are

16 multiemployer plans, Compl. ¶ 4, and the Trust

17 Agreement establishing the Plans obligated Defendants

18 to make contributions for total hours worked by or

19 guaranteed to all employees covered by the agreements

20 by the last day of the week following the week in which

21 work was performed.  Compl. ¶ 17; Tashchyan Decl. ¶ 7A.

22 Lastly, Defendants failed to make the contribution

23 payments between October 25, 2006 and May 4, 2010,

24

25      [5] Section 1145 provides: "Every employer who is obligated to

26 make contributions to a multiemployer plan under the terms of the
   plan or under the terms of a collectively bargained agreement

27 shall, to the extent not inconsistent with law, make such
   contributions in accordance with the terms and conditions of such

28 plan or such agreement."

which was discovered through a 2014 audit.  Compl. ¶
24; Tashchyan Decl. ¶¶ 11-12.  They also failed to pay
the total balance of the unpaid contributions, and have
remaining unpaid contributions, liquidated damages,
interest, and audit fees due and owing.  Compl. ¶ 24;
Tashchyan Decl. ¶¶ 11-12, 14.

Plaintiffs also demonstrate that they are entitled
to remedies associated with a violation of ERISA § 515.
When judgment is entered in favor of a plan under ERISA
§ 515, ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2))
requires the Court to award unpaid contributions,
interest on unpaid contributions, an amount equal to
the greater of interest on unpaid contributions or
liquidated damages provided under the plan, reasonable
attorney's fees and costs, and other such legal or
equitable relief as the Court deems appropriate.  The
Trust Agreements mirror ERISA § 502(g)(2)'s language
and obligate a delinquent employer to pay for
delinquent contributions, liquidated damages, interest
accruing at the rate of 1% per month on all unpaid
contributions, and all expenses of collection,
including costs, reasonable accountants' fees,
auditors' fees and attorneys' fees.  Compl. ¶ 18;
Tashchyan Decl. ¶ 7B-7E, Exs. 1-3.  As such, the Court
can conclude that Plaintiffs have properly stated a
claim for and are entitled to remedies under ERISA §
502(g)(2).

///

iii.    *Injunctive Relief: Audit*

Plaintiffs also seek injunctive relief compelling specific performance of Defendants' obligation to allow Plaintiffs to audit the period of July 15, 2012 to May 21, 2016.  Compl. ¶ 27.  Because Defendants have thus far refused, Plaintiffs request the Court grant an audit so it can ascertain whether contributions have been paid for this time period.  Id. at ¶ 29.

"Where a collective bargaining agreement gives the Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced." Bd. of Trustees v. LML Enters., Inc., No. C 13-3117 RS, 2014 WL 2880023, at *7 (N.D. Cal. June 24, 2014) (citing Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 569 (1985)). Pursuant to ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)),[6] Plaintiffs may seek an injunction enforcing the Plan's audit provisions.  Here, the Trust Agreement allows the Directors to "audit . . . the records of any Employer which may be pertinent in connection with the said contributions . . . ."  Because the Trust Agreement expressly provides for audits like this one, and "[t]he right of employee benefit plans to enforce such power

---

[6] Section 1132(a)(3) provides: "A civil action may be brought [ ] by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

to audit is well-established," the court finds the "specific performance" claim—effectively, one for injunctive relief—has merit. Bd. of Trustees v. Protech Servs., Inc., No: C 12-01047 MEJ, 2014 WL 122702, at *6 (N.D. Cal. Jan. 14, 2014)(merits and sufficiency of complaint factors weighed towards allowing audit to proceed, in order to allow plaintiffs to discover additional amounts due and owing.)

        c.   *Sum of Money at Stake in the Action*

"Under the [fourth] Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176. "While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages." Moroccanoil, Inc. V. Allstate Beauty Prod., Inc., 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012).

For the breach of ERISA and Trust Agreement claims, Plaintiffs request $7,938.78 for payment of the owed contributions, $7,704.08 for liquidated damages, $7,704.08 for interest, $2,000.81 for attorneys' fees, and $505.74 for litigation costs.  These amounts are all authorized under the Trust Agreements and "appropriately tailored to [Defendants'] specific misconduct in failing to make timely contribution payments." RT/DT, Inc., 2013 WL 2237871, at *5.  And because costs associated with failure to comply with an

audit are clearly set forth in the Trust Agreements,
that amount can be better discerned at a later time, as
can the total amount of damages following the audit.
Bd. of Trustees v. RBS Washington Blvd, LLC, No. C
09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8,
2010) ("The Court can evaluate the reasonableness of
the total amount requested once the audit has been
completed . . . [t]he undetermined amount of total
damages does not disfavor granting default judgment.")

        d.   *Possibility of a Dispute Concerning a*
            *Material Fact*

     The fifth Eitel factor examines the likelihood of
dispute between the parties regarding the material
facts surrounding the case.  A defendant is "deemed to
have admitted all well-pleaded factual allegations" in
the Complaint upon entry of default.  DirecTV, Inc. v.
Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007).
Defendants have had sufficient time since the Complaint
was served in August 2016 to answer or at least oppose
this Motion.  Considering this with the fact that ERISA
§ 502(g)(2) (29 U.S.C. § 1132(g)(2)) and the Trust
Agreements are clear as to both parties' obligations in
the event of a breach of the collective bargaining
agreements, the Court finds that any material factual
disputes are unlikely and this factor weighs towards
granting default judgment.

///

///

e.   *The Possibility of Excusable Neglect*

This factor examines whether Defendants' failure to respond to Plaintiffs' Complaint was the result of excusable neglect.  Eitel, 782 F.2d at 1472. Defendants were properly served with the summons, Complaint, and instant Motion, which indicates that they had adequate notice of the action.  See Shanghai Auto. Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because defendants were properly served with the complaint, notice of entry of default, and papers in support of motion for default judgment).

f.   *Policy Favoring Deciding a Case on its Merits*

The Ninth Circuit stated that "[c]ases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, "this preference, standing alone, is not dispositive." PepsiCo, 238 F. Supp. 2d at 1177.  Because Defendants have failed to participate meaningfully in this litigation, a decision on the merits is not "reasonably possible" at this juncture.  Nevertheless, this factor weighs against granting default judgment.

3.   Character and Amount of Plaintiffs' Recovery

The Court now turns to the damages Plaintiffs request.

a.   *Unpaid Contributions*

Plaintiffs seek unpaid contributions of $7,938.78

from October 25, 2006 to May 4, 2010, after an audit
revealed $9,523.58 in unpaid contributions and
Defendants only paid $1,584.80 of the outstanding
balance.  Compl. ¶¶ 24-25.  To substantiate this
amount, Plaintiffs submit the Declaration of Chris
Tashchyan, the Manager of Audit and Collections.
Tashchyan Decl. ¶ 2.  Mr. Tashchyan is tasked with
auditing and collecting employer contributions to the
Plans.  Id.  The declaration and attached exhibits
establish that Defendants allowed an audit in 2014
pursuant to the Trust Agreements, which revealed the
relevant employees and time periods for which they were
unpaid.  Tashchyan Decl. ¶ 12; Ex. 10.  Mr. Tashchyan
also furnishes a schedule of over reported and
underreported contributions to the Plans indicating how
Plaintiffs calculated the $9,523.58 total and the
remaining $7,938.78 owed.  Tashchyan Decl. Ex. 10, ECF
No. 21-5.  Plaintiffs have demonstrated they are
entitled to this amount in unpaid contributions.

       b.   *Interest and Liquidated Damages*

Plaintiffs also seek interest and liquidated
damages on unpaid contributions of $7,704.08 each.
ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) permits a
plan fiduciary to collect interest on all delinquent
contributions once they have prevailed on an ERISA §
515 (29 U.S.C. § 1145) claim, allowing for an interest
rate provided under the Plans.

The Ninth Circuit has clearly stated that an award

of liquidated damages under ERISA § 502(g)(2) (29
U.S.C. § 1132(g)(2)) is "mandatory and not
discretionary." Operating Eng'rs Pension Trust v. Beck
Engineering & Surveying Co., 746 F.2d 557, 569 (9th
Cir. 1984). A plaintiff is entitled to a mandatory
award under § 1132(g)(2) if the following requirements
are met: (1) the fiduciary obtains a judgment in favor
of the plan; (2) unpaid contributions exist at the time
of the suit; and (3) the plan provides for liquidated
damages. Idaho Plumbers & Pipefitters Health & Welfare
Fund v. United Mech. Contractors, Inc., 875 F.2d 212,
215 (9th Cir. 1989). Plaintiffs satisfy these
requirements, as the Court has found that the Plan was
violated, Defendants had unpaid contributions of
$7,938.78 as of the time this suit was filed, and the
Trust Agreements allow for liquidated damages.
Tashchyan Decl. ¶ E; Ex. 1, at 12; Ex. 2, at 19; Ex. 3,
at 26. Plaintiffs are therefore entitled to interest
and liquidated damages.

   c. *Attorneys' Fees and Litigation Costs*

  Plaintiffs lastly seek attorneys' fees of $2,000.81
and costs of suit, of $505.74. Central District Local
Rule 55-3 delineates a schedule of attorneys' fees in
the event of default judgment, if the applicable
statute provides for recovery of reasonable attorneys'
///
///
///

22

fees.[7] <u>Vogel</u>, 992 F. Supp. 2d at 1016.  If the
judgment, exclusive of costs, falls between $10,000 to
$50,000, the court is to award attorneys' fees of
$1,200 plus 6% of the amount over $10,000.  Rosenfeld
Decl. ¶ 8.  Here, the judgment exclusive of costs is
$23,346.93.  <u>Id.</u> at ¶ 8.  Applying the attorneys' fees
schedule, Plaintiffs are entitled to $2,000.81.  <u>Id.</u>
The Court likewise finds the litigation costs for
service of process, $105.74, and filing fees of $400.00
accurately reflect the $505.74 total in costs.  <u>Id.</u> at
¶ 9; ECF Nos. 12-13.

       d.   *Injunctive Relief: Audit*

Plaintiffs request that the Court issue an Order
requiring Defendants to submit to an audit of their
records from July 15, 2012 through May 21, 2016 so that
Plaintiffs may discern additional unpaid contributions.
Plaintiffs also ask the Court to amend the damages
amount once further unpaid contributions are determined
through the audit.  Compl. ¶ 29.

"In ERISA cases, courts may retain jurisdiction to
adjust the damages award following an audit." <u>Protech</u>
<u>Services</u>, 2014 WL 122702, at *13.  Under the Trust
Agreements, the Board of Directors may "audit or cause
the audit or an inspection of the records of any
Employer which may be pertinent in connection with the

---

    [7] Here, the applicable statute ERISA § 502(g)(2)(29 U.S.C. §
(g)(2)) allows for "reasonable attorneys' fees," rendering Local
Rule 55-3 applicable.

said Contributions and/or reports and insofar as same may be necessary to accomplish the purposes of this plan." Compl. ¶ 20; Tashchyan Decl. ¶ 7B, Ex. 1, pp. 14-15; Ex. 2, p. 21; Ex. 3, p. 28. On June 23, 2016, Mr. Tashchyan sent a letter to Defendants attaching the relevant Trust Agreement language and requesting that Defendants submit to an audit. Tashchyan Decl. Ex. 11. Moreover, the attached Trust Agreements put Defendants on notice that they would bear the expenses of enforcement related to the audit. Id. Based on the submitted exhibit and the plain terms of the Trust Agreements, Plaintiffs have the right to audit "and demand payment of properly substantiated additional delinquencies." Protech Services, 2014 WL 122702, at *13. Once Plaintiffs make a proper showing as to delinquencies, the Court may proceed to amend the Judgment.

The Court awards Plaintiffs' requested damages, and permits Plaintiffs to conduct an audit for the Plans for the period of July 15, 2012 to May 21, 2016.

### III. CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Default Judgment [21-1]. The Court enters default judgment as to all Defendants, S&L Tramondo and Alternative Metal Supply.

The Court awards $18,149.41 in damages: $7,938.78 for delinquent contributions; $7,704.08 in liquidated damages; $2,000.81 in attorneys' fees; $505.74 in

litigation costs; plus interest, at the rate of one percent (1%) per month, commencing when payment was due beginning on October 25, 2006, and continuing until payment is made.

The Court also **HEREBY ORDERS** Defendants submit to an audit of its financial records by Plaintiffs for the period July 15, 2012 to May 21, 2016.  In the event Defendants cannot produce all of the records which the Plans are required to examine, Defendants are ordered to participate in record reconstruction, where Defendants shall have 14 days to: (1) apply to the Federal and State agencies with which Defendants previously filed periodic reports pertaining to employees for copies of the Defendants' reports to them for all of the periods for which Defendant cannot produce records; and (2) subsequently make available to the Plans all such copies of Defendants' periodic reports to the Federal and State agencies under the conditions set forth above. The Court shall retain jurisdiction over the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for further money judgment, should the audit disclose amounts that Defendants may owe.

**IT IS SO ORDERED.**

DATED: December 15, 2016        s/ RONALD S.W. LEW

                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge

25